# Maine Citizen's Guide to the

# Referendum Election

### Tuesday, November 7, 2023



**In Accordance with
the April 7th, 2023 Proclamation of the Governor
and with the Acts Passed by the 131st Legislature
at the First Special Session**

**Shenna Bellows
Secretary of State**

Appropriation 014 29A 069202

**State of Maine**
**Office of the Secretary of State**
**Augusta, Maine 04333**

Dear Fellow Citizen,

The information in this booklet is intended to help voters learn about the questions that will appear on the November 7, 2023 Referendum Election ballot. Referendum elections are an important part of the heritage of public participation in Maine.

Inside this booklet, you will find:

- the referendum questions;
- the legislation each question represents;
- a summary of the intent and content of the legislation;
- an explanation of the significance of a "yes" or "no" vote;
- an estimate of the fiscal impact of each referendum question on state revenues, appropriations and allocations; and
- public comments filed in support of or in opposition to each ballot measure.

For information about how and where to vote, please contact your local Municipal Clerk or call Maine's Division of Elections at 207-624-7650. Information is also available online at www.maine.gov/sos.

The Department of the Secretary of State, the Attorney General, the State Treasurer and the Office of Fiscal and Program Review have worked together to prepare this booklet of information, and we hope you find it helpful.

Sincerely,

*Shenna Bellows*

Shenna Bellows
Secretary of State

1

# State of Maine
## Referendum Election, November 7, 2023
### Listing of Referendum Questions

### Question 1: Citizen's Initiative

Do you want to bar some quasi-governmental entities and all consumer-owned electric utilities from taking on more than $1 billion in debt unless they get statewide voter approval?

### Question 2: Citizen's Initiative

Do you want to ban foreign governments and entities that they own, control, or influence from making campaign contributions or financing communications for or against candidates or ballot questions?

### Question 3: Citizen's Initiative

Do you want to create a new power company governed by an elected board to acquire and operate existing for-profit electricity transmission and distribution facilities in Maine?

### Question 4: Citizen's Initiative

Do you want to require vehicle manufacturers to standardize on-board diagnostic systems and provide remote access to those systems and mechanical data to owners and independent repair facilities?

### Question 5: Constitutional Amendment

Do you favor amending the Constitution of Maine to change the time period for judicial review of the validity of written petitions from within 100 days from the date of filing to within 100 business days from the date of filing of a written petition in the office of the Secretary of State, with an exception for petitions filed within 30 calendar days before or after a general election?

### Question 6: Constitutional Amendment

Do you favor amending the Constitution of Maine to require that all of the provisions of the Constitution be included in the official printed copies of the Constitution prepared by the Secretary of State?

### Question 7: Constitutional Amendment

Do you favor amending the Constitution of Maine to remove a provision requiring a circulator of a citizen's initiative or people's veto petition to be a resident of Maine and a registered voter in Maine, requirements that have been ruled unconstitutional in federal court?

## **Question 8: Constitutional Amendment**

Do you favor amending the Constitution of Maine to remove a provision prohibiting a person under guardianship for reasons of mental illness from voting for Governor, Senators and Representatives, which the United States District Court for the District of Maine found violates the United States Constitution and federal law?

**Question 2: Citizen's Initiative**

*Do you want to ban foreign governments and entities that they own, control, or influence from making campaign contributions or financing communications for or against candidates or ballot questions?*

**STATE OF MAINE**

**"An Act to Prohibit Campaign Spending by Foreign Governments and Promote an Anticorruption Amendment to the United States Constitution"**

**Be it enacted by the People of the State of Maine as follows:**

**Sec. 1. 21-A MRSA §1064** is enacted to read:
**§1064.  Foreign government campaign spending prohibited**
**1. Definitions.**  As used in this section, unless the context otherwise indicates, the following terms have the following meanings.
A.  "Contribution" has the meanings given in section 1012, subsection 2 and section 1052, subsection 3.
B.  "Electioneering communication" means a communication described in section 1014, subsection 1, 2 or 2-A.
C.  "Expenditure" has the meanings given in section 1012, subsection 3 and section 1052, subsection 4.
D.  "Foreign government" includes any person or group of persons exercising sovereign de facto or de jure political jurisdiction over any country other than the United States or over any part of such country and includes any subdivision of any such group and any group or agency to which such sovereign de facto or de jure authority or functions are directly or indirectly delegated. "Foreign government" includes any faction or body of insurgents within a country assuming to exercise governmental authority, whether or not such faction or body of insurgents has been recognized by the United States.
E.  "Foreign government-influenced entity" means:
   (1)  A foreign government; or
   (2)  A firm, partnership, corporation, association, organization or other entity with respect to which a foreign government or foreign government-owned entity:
      (a)  Holds, owns, controls or otherwise has direct or indirect beneficial ownership of 5% or more of the total equity, outstanding voting shares, membership units or other applicable ownership interests; or
      (b)  Directs, dictates, controls or directly or indirectly participates in the decision-making process with regard to the activities of the firm, partnership, corporation, association, organization or other entity to influence the nomination or election of a candidate or the initiation or approval of a referendum, such as decisions concerning the making of contributions, expenditures, independent expenditures, electioneering communications or disbursements.

8

 F. "Foreign government-owned entity" means any entity in which a foreign government owns or controls more than 50% of its equity or voting shares.
 G. "Independent expenditure" has the meaning given in section 1019-B, subsection 1.
 H. "Public communication" means a communication to the public through broadcasting stations, cable television systems, satellite, newspapers, magazines, campaign signs or other outdoor advertising facilities, Internet or digital methods, direct mail or other types of general public political advertising, regardless of medium.
 I. "Referendum" means any of the following:
  (1) A people's veto referendum under the Constitution of Maine, Article IV, Part Third, Section 17;
  (2) A direct initiative of legislation under the Constitution of Maine, Article IV, Part Third, Section 18;
  (3) A popular vote on an amendment to the Constitution of Maine under the Constitution of Maine, Article X, Section 4;
  (4) A referendum vote on a measure enacted by the Legislature and expressly conditioned upon ratification by a referendum vote under the Constitution of Maine, Article IV, Part Third, Section 19;
  (5) The ratification of the issue of bonds by the State or any state agency; and
  (6) Any county or municipal referendum.

 **2. Campaign spending by foreign governments prohibited.** A foreign government-influenced entity may not make, directly or indirectly, a contribution, expenditure, independent expenditure, electioneering communication or any other donation or disbursement of funds to influence the nomination or election of a candidate or the initiation or approval of a referendum.

 **3. Solicitation or acceptance of contributions from foreign governments prohibited.** A person may not knowingly solicit, accept or receive a contribution or donation prohibited by subsection 2.

 **4. Substantial assistance prohibited.** A person may not knowingly or recklessly provide substantial assistance, with or without compensation:
 A. In the making, solicitation, acceptance or receipt of a contribution or donation prohibited by subsection 2; or
 B. In the making of an expenditure, independent expenditure, electioneering communication or disbursement prohibited by subsection 2.

 **5. Structuring prohibited.** A person may not structure or attempt to structure a solicitation, contribution, expenditure, independent expenditure, electioneering communication, donation, disbursement or other transaction to evade the prohibitions and requirements in this section.

 **6. Communications by foreign governments to influence policy; required disclosure.** Whenever a foreign government-influenced entity disburses funds to finance a public communication not otherwise prohibited by this section to influence the public or any state, county or local official or agency regarding the formulation, adoption or amendment of any state or local government policy or regarding the political or public interest of or government relations with a foreign country or a foreign political party, the public communication must clearly and conspicuously contain the words "Sponsored by" immediately followed by the name of the foreign government-influenced entity that made the disbursement and a statement identifying that foreign government-influenced entity as a "foreign government" or a "foreign government-influenced entity."

**7. Due diligence required.**  Each television or radio broadcasting station, provider of cable or satellite television, print news outlet and Internet platform shall establish due diligence policies, procedures and controls that are reasonably designed to ensure that it does not broadcast, distribute or otherwise make available to the public a public communication for which a foreign government-influenced entity has made an expenditure, independent expenditure, electioneering communication or disbursement in violation of this section. If an Internet platform discovers that it has distributed a public communication for which a foreign government-influenced entity has made an expenditure, independent expenditure, electioneering communication or disbursement in violation of this section, the Internet platform shall immediately remove the communication and notify the commission.

**8. Penalties.**   The commission may assess a penalty of not more than $5,000 or double the amount of the contribution, expenditure, independent expenditure, electioneering communication, donation or disbursement involved in the violation, whichever is greater, for a violation of this section.  In assessing a penalty under this section, the commission shall consider, among other things, whether the violation was intentional and whether the person that committed the violation attempted to conceal or misrepresent the identity of the relevant foreign government-influenced entity.

**9. Violations.** Notwithstanding section 1004, a person that knowingly violates subsections 2 through 5 commits a Class C crime.

**10.  Rules.**  The commission shall adopt rules to administer the provisions of this section. Rules adopted under this subsection are routine technical rules as defined in Title 5, chapter 375, subchapter 2-A.

**11.  Applicability.**  Notwithstanding section 1051, this section applies to all persons, including candidates, their treasurers and authorized committees under section 1013-A, subsection 1; party committees under section 1013-A, subsection 3; and committees under section 1052, subsection 2.

**Sec. 2.  Accountability of Maine's Congressional Delegation to the people of Maine with respect to federal anticorruption constitutional amendment.**

**1. Definitions.**  As used in this section, unless the context otherwise indicates, the following terms have the following meanings.

A.  "Actively support and promote" means to sponsor or cosponsor in Congress a joint resolution proposing pursuant to the United States Constitution, Article V an anticorruption constitutional amendment, and to advance such constitutional amendment by engaging, working and negotiating with others in Congress, the State of Maine and the United States in good faith and without respect to party partisanship to secure passage of such constitutional amendment in Congress so that Maine and the several states may consider ratification of such constitutional amendment.

B.  "Anticorruption constitutional amendment" means a proposed amendment to the United States Constitution that is consistent with the principles of the Maine Resolution and the reaffirmation of the Maine Resolution.

C.  "The Maine Resolution" means the joint resolution, Senate Paper 548, adopted by the 126th Legislature of the State of Maine on April 30, 2013 calling for an amendment to the United States Constitution to "reaffirm the power of citizens through their government to regulate the raising and spending of money in elections."

**2. Reaffirmation of the Maine Resolution.** The Maine Resolution is hereby reaffirmed and clarified to call on each member of Maine's Congressional Delegation to actively support and promote an effective anticorruption amendment to the United States Constitution to secure the following principles and rights:

A. That governmental power derives from the people, and influence and participation in government is a right of all the people and under the Constitution of Maine and the United States Constitution, should not be allocated or constrained based on the use of wealth to influence the outcome of elections and referenda; and

B. That Maine and the several states, and Congress with respect to federal elections, must have the authority to enact reasonable limits on the role of money in elections and referenda to secure the rights of the people of Maine to free speech, representation and participation in self-government; the principles of federalism and the sovereignty of the State of Maine and the several states; and the integrity of Maine elections and referenda against corruption and foreign influence.

**3. Accountability.** For 7 consecutive years beginning on July 31, 2023, the Commission on Governmental Ethics and Election Practices shall issue a report, following public comment, identifying anticorruption amendment proposals introduced in Congress, and the members of Maine's Congressional Delegation sponsoring such proposals.

### SUMMARY

This initiated bill makes the following changes to the election laws.

1. It prohibits a foreign government-influenced entity from making, directly or indirectly, a contribution, expenditure, independent expenditure, electioneering communication or any other donation or disbursement of funds to influence the nomination or election of a candidate or the initiation or approval of a referendum.  It prohibits a person from knowingly or recklessly providing substantial assistance, with or without compensation, in the making of an expenditure, independent expenditure, electioneering communication or disbursement in violation of this prohibition.  It prohibits a person from knowingly soliciting, accepting or receiving a contribution or donation in violation of this prohibition and prohibits a person from knowingly or recklessly providing substantial assistance, with or without compensation, in the making, solicitation, acceptance or receipt of a contribution or donation in violation of this prohibition.

2. It prohibits a person from structuring or attempting to structure a solicitation, contribution, expenditure, independent expenditure, electioneering communication, donation, disbursement or other transaction to evade the prohibitions and requirements in the initiated bill.

3. It requires, whenever a foreign government-influenced entity disburses funds to finance a public communication to influence the public or government officials on issues of state or local policy or foreign relations, that the communication include a clear and conspicuous statement naming the foreign government-influenced entity as a sponsor of the communication.

4. It directs each television or radio broadcasting station, provider of cable or satellite television, print news outlet and Internet platform to establish due diligence policies to prevent

the distribution of communications for which foreign government-influenced entities have made prohibited expenditures, independent expenditures, electioneering communications or disbursements and further directs an Internet platform to, upon discovery, immediately remove any such communications from its platform.

5. It provides that the Commission on Governmental Ethics and Election Practices may assess a penalty of not more than $5,000 or double the amount of the contribution, expenditure, independent expenditure, electioneering communication, donation or disbursement involved in the violation, whichever is greater, for a violation of the initiated bill.

6. The initiated bill also calls on each member of Maine's Congressional Delegation to actively support and promote an effective anticorruption amendment to the United States Constitution to reaffirm the power of citizens through their government to regulate the raising and spending of money in elections.

7. For 7 consecutive years beginning July 31, 2023, the initiated bill requires the Commission on Governmental Ethics and Election Practices to issue a report, following public comment, identifying anticorruption amendment proposals introduced in Congress and the members of Maine's Congressional Delegation sponsoring such proposals.

## Intent and Content
### Prepared by the Office of the Attorney General

This citizen-initiated bill is intended to ban foreign governments and entities with certain connections to foreign governments from seeking to influence Maine election campaigns. The measure is also intended to encourage Maine's congressional delegation to support amending the U.S. Constitution to undo or narrow certain U.S. Supreme Court decisions limiting regulation of campaign spending.

**Entities Subject to the Law.** The initiated measure would restrict the political activities of a class of entities that the measure calls "foreign government–influenced entities." The measure defines these entities to include both foreign governments, whether or not recognized by the United States, and "firms, partnerships, corporations, associations, organizations and other entities" that meet one of two criteria:

(1) A foreign government or entity that is majority-owned by a foreign government controls or owns, directly or indirectly, 5% or more of the entity; or,

(2) A foreign government or entity that is majority-owned by a foreign government "directs, dictates, controls, or directly or indirectly participates in the decision-making process" with regard to the entity's participation in election campaigns.

**Prohibitions on Election Activities.** The initiated bill would ban foreign government–influenced entities from engaging in certain election activities. Included in the ban would be making monetary or in-kind contributions, making expenditures (whether they are independent or in coordination with a candidate), making electioneering communications, and making any other donations or disbursement of funds to influence a campaign. The ban would apply to both candidate campaigns and referenda campaigns, including referenda for direct initiatives, people's vetoes, constitutional amendments, bonds, Legislature-directed referenda, and county and municipal referenda.

The initiated measure also bans soliciting, accepting, or receiving a contribution by a foreign government–influenced entity or providing substantial assistance in carrying out any of the prohibited activities. It further prohibits structuring or attempting to structure transactions to evade the measure's prohibitions.

The initiated measure would make a knowing violation of any of the above restrictions a Class C crime punishable by up to 5 years in prison and a criminal fine of up to $5,000 for an individual. An entity could be punished with a criminal fine of up to $20,000. The measure would also authorize the Commission on Governmental Ethics and Election Practices to impose civil fines of up to $5,000 for a violation, whether the violation was knowing or inadvertent.

**Disclosure Requirement for Other Public Communications.** The initiated bill does not ban foreign government–influenced entities from seeking to influence the public or any state, county, or local official or agency on matters of public policy. However, if these entities make expenditures to finance a public communication to influence government policy or a government's relations with a foreign country or foreign political party, that communication would be required to contain a

disclaimer.  Specifically, the communication would have to conspicuously state that it is "sponsored by" the entity and disclose that the entity is a foreign government or foreign government–influenced entity.  To be subject to this requirement, the communication must be to the public and made through television, newspaper, magazine, campaign sign, the Internet, other digital methods, direct mail, or another type of general public political advertising, regardless of medium.

Violation of this disclosure provision would not be a crime but would be punishable by a civil fine of up to $5,000, imposed by the Commission on Governmental Ethics and Election Practices.

**Obligations on the Media and Internet Platforms.**  The law would impose "due diligence" requirements on television and radio broadcasting stations, providers of cable or satellite television, print news outlets, and Internet platforms.  These entities would be subject to two requirements.  First, they would be required to create policies reasonably designed to ensure that they did not disseminate communications illegally financed by foreign government–influenced entities.  Second, if the entities discover they have distributed such a communication, they would be required to immediately remove it and report it to the Commission on Governmental Ethics and Elections Practices.

**U.S. Constitutional Amendment.**  The initiated measure would call on Maine's congressional delegation to support and promote an amendment to the United States Constitution.  The initiated measure does not specify language for the proposed amendment.  Instead, it sets forth principles and rights that any proposed amendment should secure.  These principles and rights include recognizing that all people have a right to influence and participate in government, which should not be allocated or constrained based on wealth; recognizing that Maine and other states must have authority to enact reasonable limits on the role of money in elections; recognizing principles of federalism and the sovereignty of Maine and other states; and recognizing the need for integrity of Maine elections and referenda against corruption and foreign influence.  The initiated measure also reaffirms a joint resolution adopted by the Maine Legislature in 2013 that included language critical of certain United States Supreme Court decisions relating to campaign finance regulation, naming in particular *Buckley v. Valeo* and *Citizens United v. Federal Election Commission.*

The initiated measure does not purport to be binding on Maine's congressional delegation.  Instead, the initiated measure would require the Commission on Governmental Ethics and Elections Practices to issue an annual report identifying anticorruption amendment proposals in Congress and the members of Maine's congressional delegation sponsoring such proposals.

**A "YES" vote is to enact the initiated legislation.**

**A "NO" vote opposes the initiated legislation.**

**Fiscal Impact Statement**
**Prepared by the Office of Fiscal and Program Review**

      This citizen initiative prohibits expenditures by foreign governments or foreign government-influenced entities to influence the nomination or election of a candidate or the initiation or approval of a referendum. These prohibitions and new requirements for additional annual reporting by the Commission on Governmental Ethics and Election Practices about federal anticorruption efforts are not anticipated to create additional costs for the State or local units of government.

      The initiative also creates a new Class C crime for violations of the proposed changes. The average cost of incarcerating one individual for a single year is $55,203. No assumption is made at this time of the number of individuals who may be incarcerated for violations of such crimes in the future, if any. Any additional workload associated with the minimal number of new cases that might be filed in the court system will not require additional funding. The collection of additional fine and/or fee revenue may increase General Fund and dedicated revenue by minor amounts.

## **Public Comments**

**Public Comment in Support of Question 2**

Comment submitted by:
Anna Kellar
Maine Citizens for Clean Elections
129 Grant Street, Apt. 18
Portland, ME 04101

Maine Citizens for Clean Elections (MCCE) supports a yes vote on Question 2. MCCE is a nonpartisan organization that has been working for over thirty years to ensure elections remain in the hands of voters, not big money donors.

Question 2 would close a loophole in our laws and ensure that foreign governments cannot drown out the voices of Maine voters.

Too often big-money interests try to use campaign spending to sway the outcome of elections away from what voters want. Foreign governments and foreign government controlled entities have the resources to distort our political discourse. You don't have to believe that foreign interests are bad or hostile to our government. The simple fact is that their interests and loyalties are to their foreign owners and multinational markets, not to Maine people.

Federal law now prohibits any foreign national from making contributions or expenditures in connection with a candidate election. Importantly, this federal statute also bans contributions in state and local candidate elections, in addition to those in congressional and presidential races. Maine should expand this ban to include foreign-government controlled entities in state and local referendum campaigns.

Voting Yes on 2 also makes an important statement about the need for broader reforms to reign in money in politics. Question 2 also calls on our congressional delegation to support a 28th amendment to the U.S. Constitution that would fight corruption and reduce the influence of money in politics. This amendment is more important than ever.

> The printing of this public comment does not constitute an endorsement by the State of Maine, nor does the State warrant the accuracy or truth of any statements made in the public comment.

**Public Comment in Support of Question 2**

Comment submitted by:
Kaitlin LaCasse
Protect Maine Elections
PO Box 182
Raymond, ME 04071

Vote YES ON 2 to protect our elections from the foreign governments that seek to disrupt our democracy.

A cross-partisan group of Maine voters formed Protect Maine Elections in support of banning foreign governments and entities that they own, control, or influence from making campaign contributions or financing communications for or against candidates or ballot questions. Volunteers spent a year collecting over 80,000 signatures from neighbors and friends, family members and colleagues so we can ensure this protection in law.

The Maine government isn't permitted to make such campaign contributions, it is unthinkable that we would continue to allow foreign governments to do so.

82% of Maine voters support banning foreign governments, and foreign government-owned entities from spending in our elections – including 91% of Republicans, 83% of Democrats, and 82% of Independents. There are few issues – if any – where we see such a consensus among Maine voters.

Voting YES ON 2 reflects our shared values about democracy. Maine voices should not be silenced by foreign governments or dark money special interest groups.

As voters of Maine, we are responsible stewards of our democracy and want our voices and our votes to count. Vote YES ON 2 to protect our Maine elections from foreign government interference.

> The printing of this public comment does not constitute an endorsement by the State of Maine, nor does the State warrant the accuracy or truth of any statements made in the public comment.